IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| TRUE QUOTE SOFTWARE, LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 13-CV-09115 |
| | ) | |
| LIVEVOL, INC. | ) | |
| | ) | Honorable Joan B. Gottschall |
| Defendant. | ) | |
| | ) | |

**ANSWER OF TRUE QUOTE SOFTWARE, LLC TO
LIVEVOL, INC.'S AMENDED AFFIRMATIVE DEFENSES**

This is the Answer of True Quote Software, LLC to the Amended Affirmative Defenses and Defendant, Livevol, Inc.

**ANSWERS TO FACTS COMMON TO ALL AFFIRMATIVE DEFENSES**

35. On or about November 1, 2011, Kimberly Kramer ("Kramer") and Evan Jones ("Jones") sole members of True Quote entered into employment agreements with Livevol (the "Employment Agreements"). True and accurate copies of the Employment Agreements are attached hereto as **Exhibit A.**

**ANSWER: ADMIT Kramer and Jones entered into Letters of Understanding concerning their respective employments with Livevol in their individual capacities. True Quote has insufficient information to admit or deny the remaining allegations of Paragraph 35 and therefore DENIES them.**

36. Following the execution of the Agreement, Livevol and True Quote commenced negotiations for Livevol to acquire True Quote's software (defined above as the "Software") and

1

related intellectual property. In connection with those negotiations, the parties entered into a Memorandum of Understanding on August 8, 2011 that outlined the acquisition plan. Had the acquisition closed, Livevol would have hired Kramer and Jones as employees to continue build on the Software, improve the Software, and ultimately to integrate the Software into Livevol's systems.

> **ANSWER:** **ADMIT True Quote and Livevol entered into a Memorandum of Understanding regarding Livevol's desire and intention to purchase certain assets of True Quote, including the rights to the Software. DENY all other allegations of Paragraph 36 and state further that the proposed Asset Purchase Agreement was never finalized and the transaction never came to fruition. True Quote states even further that Livevol hired Kramer and Jones as employees in their respective individual capacities.**

37. By late October 2011, Livevol and True Quote had not finalized the acquisition transaction. By that point, True Quote had a problem (as revealed by Kramer and Jones): it no longer had the financial means to operate (i.e., pay the vendors' lees and other costs related to the Software). To resolve True Quote's financial problems, Livevol offered to hire Kramer and Jones as employees and to pay True Quote's vendors' fees and Software related costs, and to allow True Quote to use Livevol's technology infrastructure to operate its Software, and permitted True Quote to use Livevol's own vendors and data feed to operate the Software.

> **ANSWER:** **DENY and state further that it was always intended that Livevol be the Vendor of Record with respect to the Software. True Quote states further that according to the Agreement, Livevol was responsible for**

2

**paying for its own technology infrastructure to operate the Software, including, but not limited to, data feeds. True Quote states even further that Livevol was required to pay vendor fees and pay for data feeds in its position as a Vendor of Record for its own proprietary trading systems.**

38. True Quote and Livevol explicitly or implicitly agreed that, starting on or about November 1, 2011, in exchange for Livevol hiring Kramer and Jones as salaried employees (with benefits) to work to improve the Software, and for permitting True Quote to use Livevol's technology infrastructure to operate the Software, and for paying True Quote's vendors' fees for services necessary for the operation of the Software, and for permitting True Quote to use Livevol's own vendors and data feeds to operate the Software, True Quote would release Livevol of all payment obligations under the Software License Agreement (defined above as the "Agreement") and cease all invoicing for any User Fees owed under the Agreement (defined above as the "Fees"). Under the Agreement, invoices were required to be submitted on a monthly basis. *See* Plaintiff's Exhibit A, ¶ 2.2.

**ANSWER: DENY the allegations of the First Sentence of Paragraph 38. ADMIT the Agreement stands on its own and DENY the remaining allegations of Paragraph 38.**

39. In accordance with that agreement, from on or about November 1, 2011 through May 24, 2013, Livevol employed Kramer and Jones on a full-time basis and paid each of them a salary plus benefits. During that time, Livevol allowed True Quote to use Livevol's technology infrastructure to operate the Software, assumed True Quote's payment obligations to True Quote's vendors, paid all vendors' fees for services necessary for the operation of the Software, and

permitted True Quote to use Livevol's own vendors and data feed to operate the Software.

**ANSWER: ADMIT Livevol employed Kramer and Jones in their respective individual capacities and DENY the remaining allegations of Paragraph 39.**

40. Similarly, from November 1, 2011 to August 8, 2013, True Quote ceased all invoicing of Livevol for Fees under the Agreement.

**ANSWER: DENY the allegations of Paragraph 40.**

### First Affirmative Defense

Plaintiff is not entitled to the relief sought in counts I or II of the Complaint as the parties through their respective verbal statements, written agreements and conduct modified the Agreement such that True Quote was no longer entitled to Fees after November 1, 2011.

**ANSWER: DENY.**

### Second Affirmative Defense

Plaintiff is not entitled to the relief sought in counts 1 or 11 of the Complaint as the parties' subsequent Employment Agreements and proprietary agreements entered into on or November 1, 2011 constitute a novation of the Agreement.

**ANSWER: DENY.**

### Third Affirmative Defense

The relief sought in counts I or II of the Complaint is barred, in whole or in part, by the doctrine of waiver. In particular, True Quote, acting through the words and actions of its agents and members, Kramer and Jones, voluntarily agreed to forego monthly fees under the Agreement in exchange for Livevol's agreement to hire and pay a salary to Kramer and Jones, who would then

4

work to improve the Software so that Livevol could continue to license and exploit the improved Software in its business, permit True Quote to use Livevol's technology infrastructure, vendors and data feeds to operate the Software, and pay True Quote's vendors' fees for services necessary for the operation of the Software. Subsequent to Livevol's hiring of Kramer and Jones as employees, True Quote ceased to invoice Livevol on a monthly basis or otherwise and made no demand for payment of Fees until just before the initiation of this lawsuit.

**ANSWER: DENY.**

### Fourth Affirmative Defense

The relief sought in counts I and II of the Complaint is barred, in whole or in part, by the doctrine of equitable estoppel. True Quote, acting through its agents and members, Kramer and Jones, ceased invoicing Livevol for Fees under the Agreement coincident with Livevol's hiring of Kramer and Jones as employees. Livevol in good faith believed that True Quote had relinquished its right to compensation under the Agreement and in reliance on that belief continued to employ Kramer and Jones and to pay them to improve the Software. Having ceased its practice of invoicing Livevol in connection with Kramer and Jones's employment, True Quote is estopped from now seeking Fees under the Agreement during the period that Livevol employed Kramer and Jones.

**ANSWER: DENY.**

WHEREFORE, True Quote, LLC requests this Honorable Court enter judgment in its favor and against Defendant Livevol, Inc., dismiss Livevol, Inc.'s Amended Counterclaim, award True Quote, LLC the relief sought in the Complaint, its fees and costs, including attorneys' fees, and such other and further relief as this Honorable Court deems just and proper.

                                              Respectfully submitted,

                                              TRUE QUOTE, LLC

                                              By: /s/Brendan P. McGarry
                                                   One of its attorneys

Gerald M. Miller (01912860)
Brendan P. McGarry (6290175)
VANASCO GENELLY & MILLER
33 North LaSalle Street, Suite 2200
Chicago, IL    60602
(312) 786-5100

**CERTIFICATE OF SERVICE**

The undersigned certifies that on the 26th day of February, 2014, true and correct copies of True Quote, LLC's Answer to Defendant Livevol, Inc.'s Amended Affirmative Defenses was served electronically via the Court's CM/ECF system, and in compliance with the Federal Rules of Civil Procedure, to the following counsel of record:

>Andrew T. Solomon
>Caitlin C. Fahey
>Sullivan & Worcester LLP
>1633 Broadway
>New York, New York 10019
>asolomon@sandw.com
>cfahey@sandw.com
>
>J. Cory Faulkner
>Ashen/Faulkner
>217 N. Jefferson Street, Suite 601
>Chicago, Illinois   60661
>jcf@ashenlaw.com

/s/ Brendan P. McGarry