IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| TRUE QUOTE SOFTWARE, LLC | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | |
| | ) | |
| v. | ) | Case No. 13-CV-09115 |
| | ) | |
| LIVEVOL, INC. | ) | |
| | ) | Honorable Joan B. Gottschall |
| Defendant/Counter-Plaintiff. | ) | |
| | ) | |

**PLAINTIFF/COUNTER-DEFENDANT'S ANSWER TO
AMENDED COUNTERCLAIMS OF DEFENDANT/
COUNTER-PLAINTIFF, LIVEVOL, INC.**

For its answers to Livevol's Amended Counterclaims, Counter-Defendant, True Quote Software, LLC states as follows:

**Facts Common to All Counterclaims**

41. Defendant hereby incorporates by reference Paragraphs 1-40 as if they were fully set forth herein.

**ANSWER: True Quote hereby incorporates by reference its allegations and answers contained in Paragraphs 1-40 as if they were fully set forth herein.**

42. On or about November 1, 2011, Kramer and Jones, the sole members of True Quote, entered into an employment relationship with Livevol to further develop the Software.

**ANSWER: ADMIT Kramer and Jones became employed by Livevol in their respective individual capacities. DENY the remaining allegations of Paragraph 42.**

43. From November 1, 2011 to May 24, 3013, Kramer and Jones, as Livevol employees operating under their respective Employment Agreements and Proprietary Information and Invention Agreements (the "Proprietary Agreements"), worked to improve the

Software. True and accurate copies of the Proprietary Agreements are attached hereto as Exhibit B.

> **ANSWER: DENY Kramer's position included working on the Software. ADMIT part of Jones' duties included integrating the Software into Livevol's trading systems. ADMIT the Proprietary Agreements stand on their own and DENY the remaining allegations of Paragraph 43.**

44. As part of their employment, Kramer and Jones agreed that any intellectual property that they developed, such as improvements to the Software, would belong to Livevol.

> **ANSWER: DENY Paragraph 44 accurately states the terms of the Proprietary Agreements or the terms of Kramer's and/or Jones' employments. DENY the remaining allegations of Paragraph 44.**

45. From November 1, 2011 to May 24, 2013, Livevol allowed True Quote to use Livevol's technology infrastructure, vendors and data feeds to operate the Software and paid True Quote's vendors' fees for services necessary for the operation of the Software. Absent the services provided to True Quote by Livevol, the Software would have been incapable of performing any of its intended functions; True Quote would have been in breach of the Agreement and any other similar software license agreements with other True Quote customers. Similarly, it would have been impossible for True Quote to make any improvements to the Software. Livevol's provision of these services allowed True Quote to avoid breaching the Agreement and allowed True Quote to remain in business with its other customers, thereby, continuing to benefit from the Software.

> **ANSWER: DENY and state further Livevol marketed the Software as Livevol Edge, one of its trading systems, charged traders for the use of the Software, and was**

**responsible for paying all associated fees with utilizing the Software.**

46. Since Kramer and Jones' termination, the improvements to the Software have been in True Quote's possession.

**ANSWER: DENY.**

## Count I

(Quantum Meruit)

47. Defendant hereby incorporates by reference Paragraphs 1-46 as if they were fully set forth herein.

**ANSWER: True Quote hereby incorporates by reference its allegations and answers contained in Paragraphs 1-46 as if fully set forth herein.**

48. Livevol performed services for True Quote, including improvements to the Software and the related costs associated with the improvements such as use of Livevol's technology infrastructure, vendors, and data feeds, and payment of True Quote's vendors' fees.

**ANSWER: DENY.**

49. Livevol did not perform improvements to the Software gratuitously.

**ANSWER: DENY.**

50. Livevol's improvements to the Software have a reasonable value.

**ANSWER: DENY.**

51. Allowing True Quote to retain the benefit of the improvements to the Software without paying compensation to Livevol for those improvements would be unjust.

**ANSWER: DENY.**

## Count II

(Unjust Enrichment)

52. Defendant hereby incorporates by reference Paragraphs 1-51 as if they were fully set forth herein.

**ANSWER: True Quote hereby incorporates by reference its allegations and answers contained in Paragraphs 1-51 as if fully set forth herein.**

53. True Quote has received benefits from Livevol, including the improvements to the Software and the related costs associated with the improvements such as use of Livevol's technology infrastructure, vendors, and data feeds, and payment of True Quote's vendors' fees to the detriment of Livevol as Livevol paid for the improved Software that is in True Quote's possession. True Quote also received benefits to the detriment of Livevol as due to Livevol's provision of services and payment of costs related to the Software, True Quote was able to continue its operation of the Software with its other customers and remain in business.

**ANSWER: DENY.**

54. Allowing True Quote to retain the improvements to the Software and the profits of its business operation while being funded by Livevol, without compensating Livevol for its expenses, would violate the fundamental principles of justice, equity and good conscience and would result in True Quote unjustly enriching itself at the expense of Livevol.

**ANSWER: DENY.**

### AFFIRMATIVE DEFENSES OF TRUE QUOTE, LLC

1. True Quote and Livevol entered into the Software Licensing Agreement ("Agreement"), attached as an Exhibit to the Complaint, which fully governs the relationship of the parties. Livevol alleges only quasi-contractual causes of action in its Counterclaims.

Livevol's quasi-contractual causes of action in its Counterclaims cannot stand in the face of the Agreement.

2. The relief sought by Livevol is barred by the doctrine of Laches. Livevol and True Quote entered into a Software Licensing Agreement ("Agreement"), whereby Livevol agreed to pay True Quote for the right to incorporate True Quote's Software into Livevol's line of proprietary trading systems Livevol marketed to traders. Both Parties to the Agreement intended for Livevol to be the Vendor of Record for the Software, and for Livevol to pay all related fees for the use of the Software. Livevol paid those fees and never submitted an invoice or otherwise indicated that it expected True Quote to pay those fees. True Quote relied on the Agreement and Livevol's promises to pay the fees related to the operation of the Software. To the extent Livevol now seeks to recover for those fees, the relief sought by Livevol is barred by the doctrine of Laches.

3. The relief sought by Livevol is barred by the doctrine of Waiver. Livevol and True Quote entered into a Software Licensing Agreement ("Agreement"), whereby Livevol agreed to pay True Quote for the right to incorporate True Quote's Software into Livevol's line of proprietary trading systems Livevol marketed to traders. Both Parties to the Agreement intended for Livevol to be the Vendor of Record for the Software, and for Livevol to pay all related fees for the use of the Software. Livevol paid those fees and never submitted an invoice or otherwise indicated that it expected True Quote to pay those fees. Only as a result of this action by True Quote to recover fees owed to True Quote under the Agreement is Livevol alleging True Quote owes Livevol any fees. To the extent Livevol now seeks to recover for those fees, the relief sought by Livevol is barred by the doctrine of Waiver.

  4. The relief sought by Livevol is barred by the doctrine of Estoppel. Livevol and True Quote entered into a Software Licensing Agreement ("Agreement"), whereby Livevol agreed to pay True Quote for the right to incorporate True Quote's Software into Livevol's line of proprietary trading systems Livevol marketed to traders. Both Parties to the Agreement intended for Livevol to be the Vendor of Record for the Software, and for Livevol to pay all related fees for the use of the Software. True Quote in good faith relied on Livevol to pay those fees. Livevol paid those fees and never submitted an invoice or otherwise indicated that it expected True Quote to pay those fees. True Quote fulfilled its promises to Livevol. True Quote's reliance on Livevol's promise to pay those fees would be to True Quote's detriment if Livevol were to recover those fees. To the extent Livevol now seeks to recover for those fees, the relief sought by Livevol is barred by the doctrine of Estoppel.

  WHEREFORE, True Quote, LLC requests this Honorable Court enter judgment in its favor and against Defendant Livevol, Inc., dismiss Livevol, Inc.'s Amended Counterclaim, award True Quote, LLC the relief sought in the Complaint, its fees and costs, including attorneys' fees, and such other and further relief as this Honorable Court deems just and proper.

         Respectfully submitted,

         TRUE QUOTE, LLC

         By: /s/Brendan P. McGarry
           One of its attorneys

Gerald M. Miller (01912860)
Brendan P. McGarry (6290175)
VANASCO GENELLY & MILLER
33 North LaSalle Street, Suite 2200
Chicago, IL 60602
(312) 786-5100

## CERTIFICATE OF SERVICE

The undersigned certifies that on the 26th day of February, 2014, true and correct copies of True Quote, LLC's Answer to CounterPlaintiff Livevol, Inc.'s Amended Counterclaim was served electronically via the Court's CM/ECF system, and in compliance with the Federal Rules of Civil Procedure, to the following counsel of record:

>Andrew T. Solomon
>Caitlin C. Fahey
>Sullivan & Worcester LLP
>1633 Broadway
>New York, New York 10019
>asolomon@sandw.com
>cfahey@sandw.com
>
>J. Cory Faulkner
>Ashen/Faulkner
>217 N. Jefferson Street, Suite 601
>Chicago, Illinois 60661
>jcf@ashenlaw.com

/s/ Brendan P. McGarry